# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | Misc. Case No. _____ |
| v. ) | |
| ) | |
| ALTAVISTA GROUP, INC., ) | |
| ) | |
| Respondent. ) | |
| ) | |

### DECLARATION OF ELLIOT LOWENSTEIN

I, Elliot Lowenstein, declare as follows:

1. I am an Attorney Advisor with the Federal Communications Commission Office of Inspector General (FCC OIG).  As an Attorney Advisor, I conduct investigations regarding the FCC's operations and programs, including the Lifeline program.  I have worked for the FCC OIG for seven years.  The FCC OIG is headquartered in Washington, D.C.

2. This declaration is based on my personal knowledge acquired in the performance of my duties and is submitted in support of a petition for summary enforcement of an OIG administrative subpoena *duces tecum* which David L. Hunt, the Inspector General of the FCC, signed and issued on April 17, 2015, pursuant to the authority of the Inspector General Act of 1978, 5 U.S.C. Appendix 3, section 6(a)(4) (the OIG Subpoena).  The OIG Subpoena was served on Andres Ospina, a principal at AltaVista Group, Inc. (AltaVista), on April 21, 2015.  Exhibit 2 to the accompanying Memorandum in Support of Petition for Summary Enforcement of Inspector General Subpoena (Memo) is a true and correct copy of the OIG subpoena issued to AltaVista.

3.      Under the Inspector General Act of 1978, as amended, Congress has instructed the FCC OIG to conduct investigations related to the FCC's programs and operations in order to promote economy and efficiency and to prevent and detect fraud and abuse in FCC programs and operations.  5 U.S.C. app. 3 §§ 4(a), 8G(g).

4.      The FCC oversees an entity known as the Universal Service Administrative Company (USAC), which administers the Universal Service Fund (USF) on behalf of the FCC.  Pursuant to Section 254 of the Communications Act of 1934, as amended, the FCC established the USF to fulfill the congressional mandate to preserve and advance access to certain communications services for all people in the United States.  47 U.S.C. § 254.  Lifeline, a component of the USF, is a federal government program that provides discounts on telephone service (landline or wireless) for eligible low-income consumers.  47 C.F.R. § 54.401(a).

5.      The Lifeline program is available to provide discounted service for eligible low-income consumers in every state, territory, commonwealth, on tribal lands, and in the District of Columbia.  To be eligible to receive the discount, a consumer must have income that is at or below 135 percent of the federal poverty guidelines or participate in one of a number of federal, state, or tribal assistance programs, including but not limited to Medicaid, Supplemental Nutrition Assistance Program (Food Stamps), Supplemental Security Income (SSI), or Federal Public Housing Assistance (Section 8). 47 C.F.R. § 54.409(a)(1)-(2).

6.      In 2008, telecommunications providers began to broadly offer Lifeline-discounted service to qualifying low-income consumers on pre-paid wireless service plans.  As confirmed by the FCC in 2012, Lifeline discounts are only available for one

2

service per household.  47 C.F.R. § 54.409(c).  A "household" is "any individual or group

of individuals who are living together at the same address as one economic unit."  47

C.F.R. § 54.400(h).  An "economic unit" includes "all adult individuals contributing to

and sharing in the income and expenses of a household."  47 C.F.R. § 54.400(h).

Consumers knowingly violating this rule may be subject to criminal and/or civil

penalties.  A consumer whose household receives no other Lifeline discount and who

meets either the above-stated income requirement or is enrolled in an eligible assistance

program is deemed a "qualifying low-income consumer."  47 C.F.R. § 54.400(a).

     7.     All eligible telecommunications carriers must publicize and make

available Lifeline service to qualifying low-income consumers.  47 C.F.R. § 54.405(a)-

(b).  Since 2012, an eligible telecommunications carrier receives Lifeline support of

$9.25 per month for each qualifying low-income consumer whom the carrier serves with

discounted service, and an additional $25.00 per month for each such consumer who

resides on tribal lands.  47 C.F.R. § 54.403(a).

     8.     AltaVista is a marketing company organized under the laws of the State of

New York with its principal place of business in New York, New York.  Andres Ospina

is a principal at AltaVista.

     9.     Credico (USA) LLC (Credico) is a marketing and direct-sales company

located in Chicago, Illinois.  Credico subcontracts work to AltaVista.

     10.     Virgin Mobile USA, L.P. (Virgin Mobile) is an eligible

telecommunications carrier which makes submissions for support from the Lifeline

program in 41 states and the District of Columbia.  Virgin Mobile markets its services to

qualifying low-income consumers throughout the United States under the Assurance Wireless brand. Virgin Mobile is a wholly-owned subsidiary of Sprint Corporation.

11.     Sprint/United Management Co. retained Credico on behalf of Virgin Mobile to market and enroll subscribers throughout the United States in a service branded as Assurance Wireless. Credico, in turn, retained AltaVista to conduct field-marketing in and around New York City on behalf of Virgin Mobile. Sprint/United Management Co. is also a subsidiary of Sprint Corporation.

12.     AltaVista employs or subcontracts with "account executives" to solicit customers in public places to enroll in Assurance Wireless. Lifeline customers enrolled with Assurance Wireless receive a free telephone and use the Sprint wireless network as a carrier. Account executives are generally directed to economically underprivileged communities to sign up customers.

13.     The FCC OIG's investigation of AltaVista began in March 2015. The AltaVista investigation is part of an ongoing, nationwide investigation into whether marketing companies such as AltaVista engaged in fraudulent practices to enroll telephone subscribers in the Lifeline program who were not entitled to receive services discounted by the program. Specifically, the FCC OIG is investigating whether AltaVista and other marketing companies instructed their employees to falsify or manipulate customers' name and address information in their applications in order to evade electronic systems designed to prevent the creation of duplicate customer accounts. This inquiry goes to the very heart of the FCC OIG's purpose and statutory mission.

14.     I assisted in drafting the OIG Subpoena and carefully reviewed its contents before it was issued. It is my considered position that the OIG Subpoena seeks

documents that are both within the FCC OIG's statutory authority and reasonably related and necessary to the AltaVista investigation.

15.     The FCC OIG is also investigating whether AltaVista and Mr. Ospina had knowledge that their employees engaged in fraudulent practices to enroll subscribers in the Lifeline program who were not eligible to receive services discounted by the program.

16.     It is precisely this body of information that the OIG Subpoena requires AltaVista to produce.  For example, requests 13 through 15 of the OIG subpoena seek documents relating to AltaVista's policies and procedures related to signing up customers in the Lifeline program and AltaVista's knowledge of any potential fraud by its employees related to the program.  Memo Ex. 2 at 8-9.

17.     On April 17, 2015, the FCC OIG issued a subpoena to AltaVista.  Memo Ex. 2 at 10.  The subpoena was served upon Mr. Ospina via certified mail on April 21, 2015.  Memo Ex. 2 at 1, 16.  The subpoena required AltaVista to produce all responsive documents by May 22, 2015.  Memo Ex. 2 at 1.

18.     On May 21, 2015, I first spoke with AltaVista's counsel, Edward A. Maldonado, about the subpoena and understood from that telephone call that AltaVista intended to comply with the subpoena.

19.     On May 22, 2015, the FCC OIG agreed to extend the production deadline for AltaVista to June 8, 2015.  *See* Memo Ex. 3 at 2 (E-mail from E. Lowenstein to E. Maldonado (Nov. 4, 2015)).

20.     On June 30, 2015, Mr. Maldonado informed me that AltaVista had not yet produced documents in response to the subpoena because AltaVista was having "record

copying problems." *See* Memo Ex. 3 at 2; Memo Ex. 4 at 1 (Letter from J. Keithley to E.

Maldonado (Nov. 25, 2015)).

21.     On August 26, 2015, I emailed Mr. Maldonado asking for an update about

the status of AltaVista's document production. *See* Memo Ex. 3 at 2; Memo Ex. 4 at 1.

22.     On September 21, 2015, I emailed Mr. Maldonado asking for a further

update, and when I received no response, I emailed again on October 7, 2015, and then

again on November 4, 2015. *See* Memo Ex. 3 at 1-2; Memo Ex. 4 at 1.  Again, Mr.

Maldonado did not respond. *See* Memo Ex. 4 at 1.

23.     On November 25, 2015, I sent to Mr. Maldonado an electronic copy of a

letter from Jay C. Keithley, the Assistant Inspector General for Investigations at the FCC

OIG, stating that we were troubled by AltaVista's failure to respond to the subpoena and

that if AltaVista did not produce all documents responsive to the subpoena by December

4, 2015, we planned to begin the process of enforcing the subpoena in court.  Memo Ex.

4 at 1.

24.     Mr. Maldonado never responded to this letter, and AltaVista has failed to

produce a single document in response to the OIG Subpoena.

25.     AltaVista's refusal to produce documents in response to the OIG

Subpoena directly and materially impedes this investigation.  The subpoenaed records are

indispensable to the issues that the investigation seeks to address, and are therefore

essential to a legitimate law enforcement inquiry by the FCC OIG pursuant to its

statutory authority and responsibility.  Summary enforcement of the OIG Subpoena is

therefore necessary to prevent the investigation from being thwarted by AltaVista's

noncompliance.

I declare, under the penalty of perjury, that the foregoing is true and correct.  Executed this 28th day of July, 2016.

Elliot Lowenstein
Attorney Advisor
Federal Communications Commission
Office of Inspector General

# EXHIBIT 2

*OFFICE OF INSPECTOR GENERAL*



*Washington, D.C. 20554*

April 21, 2015

<u>VIA CERTIFIED UNITED STATES MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

AltaVista Group Incorporated
c/o Andres Ospina
1150 Sixth Ave.
5th Floor
New York, NY 10036

      RE:  Federal Communications Commission Inspector General Subpoena

Dear Sir or Madam:

      Enclosed please find a Subpoena Duces Tecum issued by this office pursuant to 5a U.S.C. § 6(a)(4).

      All documents and materials demanded by this subpoena must be preserved. For instance, all emails and texts currently under your control, including those maintained by your employees, are subject to this record retention requirement and no such materials can or should be deleted. Knowingly destroying responsive materials can lead to criminal penalties, including imprisonment, under 18 U.S.C. § 1519.

      Our office will work with you to coordinate the production of the requested documents. Please contact Elliot Lowenstein at (202) 418-0488, elliot.lowenstein@fcc.gov or Peter Feinberg at (202) 418-2748, peter.feinberg@fcc.gov to discuss.

      Sincerely,

      Sharon R. Diskin
      Deputy Assistant Inspector General for
      Investigations



# UNITED STATES OF AMERICA
## FEDERAL COMMUNICATIONS COMMISSION
## OFFICE OF THE INSPECTOR GENERAL

## SUBPOENA DUCES TECUM

April 21, 2015

TO:    AltaVista Group Incorporated
c/o Andres Ospina
1150 Sixth Ave.
5th Floor
New York, NY 10036

You are hereby commanded to produce documents to the attention of Elliot Lowenstein, Esq., Attorney-Investigator, Federal Communications Commission, Office of the Inspector General, 9300 East Hampton Drive, Capital Heights, MD 20743, by May 22, 2015 at 5:00 p.m. This subpoena is issued to you under the authority of section 6(a) (4) of the Inspector General Act of 1978, 5 U.S.C. App. 3, as amended. Failure to comply with this subpoena may subject you to criminal penalties. You are hereby ordered to produce at such time and place the following as defined and instructed below.

## SECTION I – DEFINITIONS

A.      **"Affiliate"** is any person or entity (including any company) that, at any time during the period covered by this subpoena, directly or indirectly, controls, is controlled by or is under common control with the Company as well as, in the case of an entity, its d/b/a, predecessor-in-interest or successor-in-interest. For clarity, "Affiliate" includes all parent entities and subsidiaries of the Company and all entities owned or under the control of any owner of the Company.

1

B.      **"Agent"** means any agent of the Company that is involved in any way with the sign-up or processing of Customers for the Low Income Program. For clarity, an "Agent" can be a person (including an employee, agent or an independent contractor) or an entity.

C.      **"Company"** means AltaVista Group Incorporated, its predecessors-in-interest, affiliates (including parents and subsidiaries) and present or former officers, directors, employees, consultants, contractors, agents, or members of the board of directors, and any other persons working for or on behalf of the foregoing entities at any time during the period covered by this subpoena.

D.      **"Control"** means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a company, whether such power is exercised through one or more intermediary companies, or alone, or in conjunction with, or pursuant to an agreement with, one or more other companies, and whether such power is established through a majority or minority ownership or voting of securities, common directors, officers, or stockholders, voting trusts, holding trusts, affiliated companies, contract, or any other direct or indirect means.

E.      **"Customer"** means any person submitted for processing to a Low Income Provider as a prospective customer.

F.      **"Document(s)"** includes, but is not limited to: documents; correspondence; memoranda; notes; drafts; records; letters; envelopes; telegrams; messages (including, but not limited to, electronic mail, text messages, voice messages, instant messages and attachments to any of the foregoing); analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; notices; drawings; diagrams; instructions; manuals; calendars; diaries; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or company communications; questionnaires; surveys; charts; graphs; photographs; films or videos; tapes; discs; data cells; bulletins; printouts of information stored, maintained, or transmitted by electronic data or word processing equipment (including items posted on the internet or world wide web); electronic claims filing and transmittals, invoices, all other data

2

compilations from which information can be obtained including electromagnetically sensitive stored media such as floppy discs, hard discs, hard drives or magnetic tapes, and such codes or instructions as will transform such information into easily understandable form; laptop computers issued to officers and employees; and, any preliminary versions, drafts or revisions of any of the foregoing.

G. **"Lifeline"** or the **"Low Income Program"** means the Low Income Program of the Universal Service Fund, as set forth in 47 C.F.R. §§54.400-418.

H. **"Low Income Provider"** means each telecommunications carrier that has retained the services of the Company in relation to the Low Income Program, either directly or indirectly. For clarity, "Low Income Provider" includes, but is not limited to, Sprint Nextel Corporation, and its predecessors-in-interest, and affiliates (including subsidiaries) including Assurance Wireless and Virgin Mobile.

I. **"Master Agent"** means any company that is an intermediary between the Company and any Low Income Provider. For clarity, "Master Agent" includes, but is not limited to, Credico (USA) LLC.

J. **"NLAD"** means the National Lifeline Accountability Database, maintained pursuant to 47 C.F.R. §54.404.

K. **"Services related to the Low Income Program"** includes, but is not limited to, signing up Customers for the Low Income Program, as well as marketing, promotion, and direct sales of products or services offered by a Low Income Provider or otherwise related to the Low Income Program.

L. Any reference to "us," "our," and "we" herein, refers to the Office of the Inspector General. Any reference to "you" refers to the Company and/or its representative(s).

## SECTION II - INSTRUCTIONS

(A) The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (*i.e.*, "and/or"), so as to give the document request its broadest meaning. "Any" shall be

3

construed to include the word "all," and the word "all" shall be construed to include the word "any." Additionally, the word "each" shall be construed to include the word "every," and the word "every" shall be construed to include the word "each."

(B) Relevant time period: **Unless otherwise indicated, the relevant time period for this subpoena shall be for the period beginning on May 1, 2012 through the present**, and shall include all Documents created or prepared during that period, or referring or relating to that period, regardless of when the Document was created or prepared.

(C) Scope of search required: This subpoena calls for all Documents in the possession, custody or control of the Company, as defined above, including, but not limited to, its officers, directors, employees, agents, representatives, consultants and contractors. The Company is required to search all files reasonably likely to contain responsive Documents, including files left behind by former officers, directors, agents, representatives and employees. This search must include all offices, including, without limitation, offices maintained in homes of employees and officers, and including, without limitation, offices and storage facilities in any remote locations.

(D) Production in response to this subpoena must follow the Federal Communications Commission Office of Inspector General Guidelines for Production, which is attached to this subpoena as Appendix A.

## SECTION III - REQUESTED DOCUMENTS

1.  All Documents indicating or, in lieu thereof, a sworn statement that shows:

     a.  Each current owner of the Company, both direct and indirect.

     b.  The ownership interest of each current owner of the Company, both direct and indirect.

     c.  Each prior owner of the Company, both direct and indirect.

     d.  The ownership interest of each prior owner of the Company, both direct and indirect.

     e.  The dates each ownership interest of the Company was acquired, transferred or sold, both direct and indirect.

2.  All Documents listing or indicating or, in lieu thereof, a sworn statement that shows:

     a.  Each officer of the Company during the period covered by this subpoena.

     b.  The dates each officer of the Company was appointed or, where applicable, removed from office.

     c.  Each director or manager of the Company during the period covered by this subpoena.

3.  All Documents indicating or, in lieu thereof, a sworn statement that shows:

     a.  Each Affiliate of the Company.

     b.  How each Affiliate is related to the Company, including any distributions of ownership interests.

     c.  Any Affiliate that is or has been involved in the Low Income Program in any capacity.

4.  All Documents setting forth or listing or, in lieu thereof, a sworn statement that shows:

     a.  All names by which the Company has used involving the Low Income Program.

     b.  All names by which any Affiliate has used involving the Low Income Program.

5.  All Documents constituting agreements, including **but not limited to** agreements related to the Low Income Program, between the Company and:

     a.  Each Master Agent.

     b.  Each Low Income Provider.

6. All Documents constituting or setting forth the services, including **but not limited to** services as are related to the Low Income Program, provided by the Company to:

    a. Each Master Agent.

    b. Each Low Income Provider.

In lieu thereof, a sworn statement accompanying a responsive, detailed description may be provided.

7. All Documents, organized by Low Income Provider and then by date, indicating the states in which the Company provides services related to the Low Income Program for each Low Income Provider, as well as the services provided in each state.

In lieu thereof, a sworn statement accompanying a responsive, detailed description may be provided.

8. All Documents constituting, referring to or containing payments between the Company and a Master Agent or a Low Income Provider.

9. All Documents constituting agreements between the Company and any Agent.

10. All Documents identifying each Agent or any information related to such Agent, including, but not limited to, the following:

    a. All contact information for each Agent, including:

        i. The Agent's first name.

        ii. The Agent's middle name.

        iii. The Agents last name.

        iv. The Agent's address.

        v. All telephone number contacts for the Agent.

      vi.   All email contacts for the Agent.

     vii.   All fax contacts for the Agent.

    viii.   All other contacts for the Agent, including Facebook Messenger and/or Blackberry Messenger.

b.   The Low Income Providers for which each Agent was engaged to sign up Customers.

c.   The period of time for which each Agent was providing services involving each Low Income Provider.

d.   The Master Agents for which each Agent was engaged to sign up Customers.

e.   The period of time for which each Agent was providing service involving each Master Agent.

f.   The relationship of each Agent to the Company.

g.   The state(s) in which each Agent operated.

h.   The state(s) for which each Agent was signing up customers.

i.   All agent codes used by each Agent organized by month.

j.   If an Agent is an entity, all of its contact persons as well as such person's title, email address, phone number and address, if such is different from any information listed above.

k.   If an Agent is an entity, all of its owners and managers.

l.   If the Agent is an entity, all of its known personnel involved in any way concerning the Low Income Program, including their titles and roles. Such personnel include any employees, independent contractors, agents, or representatives of the Agent.

m. The number of Customers signed up by each Agent each month, (or, if the Agent name is not available, by agent code).

n. The agent code assigned to each Customer signed up, organized by the month of the Customers' sign up. The Customer may be referenced by the order number, customer ID or other identifying information of each Customer.

o. All commissions and/or other monies paid to an Agent organized by month (or, if the Agent name is not available, by agent code).

In lieu thereof, a sworn statement accompanying a database format may be provided in a format approved by the OIG technical official.

11. All Documents identifying all employees, independent contractors, agents, or representatives of the Agent.

12. All Documents identifying, containing or setting forth:

a. The criteria by which commissions have been paid at any point during the period covered by this subpoena.

b. The information that was disclosed to agents of the Company as to how the commissions would be paid at any point during the period covered by this subpoena.

13. All Documents constituting communications of any type (including but not limited to, electronic mail (including as a cc or bcc recipient), text messages, instant messaging and voice messages) which concern or are related in any way to the provision of telecommunications or the Low Income Program including, **but not limited to,**

a. All communications concerning fraud investigations, analysis or audits.

b. All communications concerning possible fraud by Agents.

c. All communications concerning conduct by Agents in signing up Customers, including how Agents should and should not sign up Customers.

8

    d.  All communications concerning or involving Customers or Agents (including Company employees) regarding the input or submission of Customer information (name, address, date of birth, social security number) during the application process, including but not limited to using multiple addresses for Customers, changing Customer names and information, and other manipulations to evade systems that prevent the creation of duplicate Customer accounts.

    e.  All communications concerning NLAD.

    f.  All communications concerning requests or instructions between any Low Income Provider and the Company's Agents.

14. All Documents constituting policies and procedures related to the Low Income Program and used by the Company or Agent including, **but not limited to**, those related to:

    a.  Customer addresses and the storage of customer addresses.

    b.  NLAD.

    c.  Access and third party access, including by Agents, to the Company's systems related to the sign-up of Customers.

    d.  Access, including by Agents, to any Low Income Provider's systems related to the sign-up of Customers.

    e.  Training materials, guidelines, rules, handbooks, protocols, and other similar materials provided to Agents and Company personnel.

15. All Documents constituting reports, investigations, audits or analysis related to or concerning potential fraud by any Agent or third party related to the Low Income Program.

Failure to obey this subpoena shall be enforceable by order of the appropriate United States
District Court.

Issued by: _David L. Hunt_____    Date: _4/17/15__

David L. Hunt
Inspector General

# Appendix A

## Federal Communications Commission Office of Inspector General Guidelines for Electronic Data Production

This appendix provides guidelines for the production of Documents in response to the subpoena to which it is attached. All Documents produced in response to the subpoena shall comply with the instructions contained herein.

In general, the subpoena recipient must confirm with OIG that the proposed electronic data formats and media types will be acceptable to the government before production. Elliot Lowenstein, an OIG Investigatory Attorney, can be reached at (202) 418-0488 or Elliot.Lowenstein@fcc.gov regarding any questions you may have in this regard. The above referenced person is an OIG technical official as referenced in this appendix.

Four topics are covered by this appendix: (i) general guidelines for Document production, (ii) production when the original Document responsive to a subpoena item is in hard copy, (iii) production when the original Document responsive to a subpoena item is maintained in an electronic format, and (iv) general guidelines for production in electronic format.

### I.   General Guidelines for Document Production

1.   Unless it meets the conditions set out below, all Documents produced in response to the subpoena must be an original Document.

2.   All Documents produced in response to the subpoena shall be segregated and labeled to show the document request to which the Documents are responsive and the source and location where the Document was found.

3.   All deliverables should be accompanied by a transmittal letter that shall include (i) the production date, (ii) producing party name, (iii) the number of the subpoena item to which each Document is responsive, (iv) the identifying logo and sequential number(s) (or Bates range), (v) a brief description of the Document, and (vi) an identification of the person(s) from whose files the Document was retrieved by name, title, and the organizational unit and the subsidiary or affiliate to which the Document pertains. If any Document is not dated, indicate on the schedule the date on which it was prepared. If any Document does not identify its author(s) or recipient(s), indicate on the schedule, if known, the name(s) of the author(s) or recipient(s). The subpoena recipient must identify with reasonable specificity all Documents provided in response to this subpoena.

11

4.   To the extent that Documents are found in file folders and other similar containers, which have labels or other identifying information, the Documents shall be produced with such file folder and label information intact.

5.   To the extent that Documents are found attached to other Documents, by means of paper clips, staples or other means of attachment, such Documents shall be produced together in their condition when found.

6.   Each page produced must be marked with an identifying logo and sequential numbering.  Identifying marks should be placed in the lower right hand corner of each page but should not obscure any information on the Document.

7.   If there are no Documents responsive to a particular subpoena request, provide a certification to that effect.

8.   You must provide a privilege log to our office if you withhold any Document, or part thereof, responsive to this subpoena due to a claim of privilege.  The privilege log must identify (i) the type of Document being withheld in whole or part (e.g., letter, memorandum, handwritten notes, marginalia, etc.), (ii) the author of the Document, (iii) all actual and intended recipients of the Document, (iv) its date, and (v) the specific privilege being asserted.  All information must be provided with sufficient particularity so as to allow the Inspector General, and potentially a court, to assess the validity of the claim of privilege.

## II.   Production When the Original Document Responsive to a Subpoena Item is in Hard Copy

1.   Fully legible, complete, and unaltered hard or electronic copies of Documents responsive to this subpoena will be accepted in lieu of original Documents, provided that you make the original Documents available upon request.

2.   Our office generally prefers to receive electronic copies in lieu of original Documents. However, such production must conform to the guidelines herein or be approved by an OIG technical official.

3.   (a) Electronic production of Documents should be in a Concordance 10 Load file (.OPT and .DAT), compatible with Concordance Image 5 with text recognition.  Stated otherwise, with the production, you should submit (i) an image load file containing a line for every image file in the production, (ii) a delimited data load file containing a line for every Document in the production, and (iii) text files for each Document.

12

(b) All Documents provided electronically in the production should be listed in a delimited data load file. We strongly recommend using these delimiters in delimited data load files:

| Description | Symbol | ASCII Character |
|---|---|---|
| Field Separator | | 20 |
| Quote Character | Þ | 254 |
| Newline | ® | 174 |
| Multiple Field Entries | ; | 059 |

(c) Documents provided in Concordance must have the text recognized, extracted and uploaded, such as through optical character recognition (OCR). Submit text as document-level text files, named for the beginning Bates number of each Document, and organized into an electronic folder separate from image production. We prefer not to receive Unicode text files unless absolutely necessary.

(d) Each page of Documents provided in Concordance should have an image file. We accept image files that are (i) black and white: 300 DPI, Group IV Tiff, or (ii) color: Jpeg files, submitted as linked native file. Images should be accompanied by a Concordance Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF or Jpeg image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

(e) Submit date and time data in separate fields so Concordance can load that information.

4.  If it is not possible to provide the Documents in the Concordance format as noted in Section 3, immediately above, the OIG technical official should be contacted. Generally, our office will accept Documents that have been scanned where all images are (i) in PDF format and (ii) where OCR has been implemented. The OIG technical official may also approve other formats on an individual basis. OIG generally prefers that the file names for approved image files conform to the 8.3 naming convention, such as 12345678.PDF or ABC00001.PDF or a consistent convention that has been approved by the OIG technical official.

## III.   Production When the Original Document Responsive to a Subpoena Item is Maintained in an Electronic Format

1.  Documents that exist in an electronic medium must be produced in that electronic medium, identified with data set and format type. Metadata may not be removed from the Document.

13

2.  Documents in a commercially available software format must be produced in such format.  Examples of documents contained in the category include documents that can be read by Microsoft Office, pdfs, and Outlook .PST.

3.  Documents that exist in non-commercially available format must be produced with all software, codes, instructions, passwords or other elements necessary to view such material in its entirety.

4.  You must have the approval of the OIG technical official to de-duplicate or to apply email threading.

## IV.    General Guidelines for Production in Electronic Format

1.  Magnetic and other electronic media types. OIG will accept:

    (a) External USB 2.0 hard drive for Windows-compatible computers with a MD5 hash for the contents of the drive;

    (b) DVD-ROM for Windows-compatible personal computers;

    (c) CD-ROMs formatted to ISO 9660 specifications; and,

    (d) Any other means approved by the OIG technical official

2.  Security. All submissions of electronic data to OIG must be free of computer viruses, malware, adware and/or spyware.  In addition, any passwords and/or encryptions protecting documents or files must be removed or provided to OIG with specific decryption instructions.

3.  You must have the approval of the OIG technical official to provide any production using the zip file format or any similar data compression software.  However, you do not need approval of the OIG technical to provide an original Document maintained in the zip file format.

4.  The following data must be discussed with the OIG technical official in advance of producing:

    (a) Hidden Text (e.g. track changes, hidden columns, mark-ups, notes);

    (b) Embedded Files (e.g. Word documents, Excel spreadsheets, .wav files, etc.);

14

(c) Image-Only Files (e.g. image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool [and other] screenshots, etc., as well as all other images that contain text);

(d) Email Repositories (e.g. email databases (e.g., Lotus .NSF, etc.) ;

(e) Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.;

(f) Structured Data (e.g., Oracle, SQL, MySQL, QuickBooks, etc.);

(g) Structured Data from Proprietary Applications (e.g., proprietary timekeeping, accounting, etc.);

(h) Photographs;

(i) Images from which Text Cannot be OCR Converted; and

(j) Format of ESI from Non-PC or Windows-based Systems (e.g., Apple, IBM mainframes and UNIX machines)

15

Certificate of Service

*I hereby certify that I have personally served, or have executed as shown in "remarks", this subpoena on the individual named below:*

| | Date | Place |
|---|---|---|
| Received by Server: | 04/21/15 | OIG FCC 445 12th St. S.W. Washington D.C. 20554 |
| Served: | Date 04/21/15 | Place   Certified mail return receipt requested. |

Served On (Name and Address):

    AltaVista Group Incorporated
    c/o Andres Ospina
    1150 Sixth Ave.
    5th Floor
    New York, NY 10036

| Served By (Name) | Title |
|---|---|
| Victoria Hall | Legal Assistant |

| Address | Office of Inspector General Federal Communications Commission 445 12th Street, S.W. Washington, D.C. 20554 | Signature: *Victoria M Hall* |
|---|---|---|

Remarks    Served by certified mail return receipt requested to the address shown above.

16

# EXHIBIT 3

| | |
|---|---|
| **From:** | Elliot Lowenstein |
| **To:** | Edward A. Maldonado (eam@maldonado-group.com) |
| **Cc:** | Peter Feinberg; Chris Howell-Little |
| **Subject:** | Follow-Up & New Deadline for Outstanding Productions |
| **Date:** | Wednesday, November 04, 2015 7:58:44 PM |
| **Importance:** | High |

Ed,

We are again following up with you about the status of overdue productions from three of your clients:

*    EMIE Marketing, Inc. - from which we have not received the promised supplemental production to cure the deficiencies we previously identified to you.

*    AltaVista Group Incorporated- from which we have not yet received any production to date.

*    Astoria Marketing, Inc. - from which we have not yet received any production to date.

We hereby provide you with 10 business days - until Friday, Nov. 20, 2015 - to provide us with all outstanding documents for these three clients. This is on top of deadlines we have provided (and you agreed to) that were passed months ago.

We have followed up with you numerous times concerning these three productions, as set forth in the summaries below.

Summary of events concerning EMIE Marketing, Alta Vista Group, and Astoria Marketing productions:

EMIE Marketing:

*    On April 21, 2015, FCC OIG issued a subpoena to EMIE Marketing with a response deadline of May 22, 2015.

*    On May 6, 2015 you notified our office that you represented EMIE.

*    On May 22, 2015, we agreed to extend the production deadline for EMIE to June 8, 2015.

*    On June 26, 2015, our office received from you the initial production of EMIE's response to the subpoena. The document was dated June 1, 2015.

*    On June 29, 2015, we notified you that EMIE's production of emails was non-responsive because EMIE's production of emails consisted entirely of three Microsoft Word Documents, and each of these three documents consisted of what was represented to be the texts of dozens of email messages that had been cut and pasted from individual email messages. Later that same day, in response to our notification, you sent us as an attachment a single Outlook email message that similarly consisted of a cut and paste of what was represented to be the texts of dozens of email messages. Later on June 29, 2015, I responded that the attached document you had just sent was not acceptable as it was little different than the Microsoft Word documents provided.

*    On June 30, 2015, you responded that you had "contacted EMIE on the email issue, we will be resending that Responsive record as soon as practicable.  It's an electronic record extraction issue."

*    On August 18, 2015, I sent you an email requesting an update about when we could expect EMIE's follow up production in response to the deficiencies identified in June 2015.

*    On August 26, 2015, I sent you another email reiterating my request that you provide an update concerning

when EMIE would cure the deficiencies previously identified.

\*      On September 21, 2015, I sent you yet another email requesting an update concerning EMIE, noting that you had not responded to my August 18 and 26 emails. Later that same day, you responded saying you thought the supplement had already been sent it, but that you could resend, and you proposed a call to confirm. Later on September 21, 2015, I responded to you, stating that we had received no supplemental production and reiterating the previously identified deficiencies. I told you when I was and was not available to speak. In response, you proposed a time to speak to me that I had already identified that I was not available. Later on September 21, 2015, I proposed another time to speak. You did not respond.

\*      On October 7, 2015, I sent you another email requesting that you provide an update concerning EMIE's production of email.

\*      As of today, we have not yet received a production from EMIE over six months after the subpoena was issued.

AltaVista Group Incorporated:

\*      On April 21, 2015, FCC OIG issued a subpoena to AltaVista Group with a response deadline of May 22, 2015.

\*      On May 21, 2014, you notified our office that you represented AltaVista Group.

\*      On May 22, 2015, we agreed to extend the production deadline for AltaVista Group to June 8, 2015.

\*      On June 30, 2015, you notified us that AltaVista Group had not yet sent disks because of "record copying problems."

\*      On August 26, 2015, I sent you an email requesting an update about when we could expect to receive the production from AltaVista Group.

\*      On October 7, 2015, I sent you another email requesting an update concerning AltaVista Group, and requested that you immediately provide us with an estimate of when we could expect to receive AltaVista Group's production.

\*      On September 21, 2015, I sent you yet another email requesting that you provide an update on when we could expect to receive AltaVista Group's production in response to the subpoena.

\*      On October 7, 2015, I sent you an email requesting that you provide an update concerning when we would receive AltaVista Group's production

# EXHIBIT 4

*OFFICE OF INSPECTOR GENERAL*

*Washington, D.C. 20554*



November 25, 2015

<u>VIA CERTIFIED UNITED STATES MAIL</u>
<u>RETURN RECEIPT REQUESTED & OVERNIGHT</u>

AltaVista Group Incorporated
c/o The Law Offices of Edward A. Maldonado, PA
2850 S. Douglas Road
Suite 303
Coral Gables, FL 33134

      RE:  FINAL NOTICE - AltaVista Group Incorporated

Dear Mr. Maldonado:

    We are writing to advise you of the action this office is considering to enforce a subpoena this office previously issued to your client. As you are aware, on April 21, 2015, our office issued a subpoena to AltaVista Group Incorporated (AltaVista). On May 21, 2015, you notified us that you were counsel to AltaVista. On June 30, 2015 you wrote to us that AltaVista was having "record copying problems."

    Since that date, our office has e-mailed you four additional times – on August 26th September 21st, October 7th and November 4th – to attempt to receive the production to no effect. In the seven months since the subpoena was issued, we have not received any response from your client to the subpoena.

    **This letter is to notify you that if our office has not received the outstanding subpoena production from AltaVista Group Incorporated, by Friday, December 4, 2015, we will initiate steps to enforce our subpoena through an action in federal district court.**

Edward A. Maldonado                                                    Page 2 of 2
November 25, 2015

    Please contact Elliot Lowenstein at 202-418-0488 or Peter Feinberg at 202-418-2748 to discuss this letter, or to confirm production arrangements.

                                    Sincerely,

                                    Jay C. Keithley
                                    Assistant Inspector General for
                                    Investigations

# EXHIBIT 5



2110 First Street, Suite 3-137
Fort Myers, Florida 33901
239/461-2200
239/461-2219 (Fax)

300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
904/301-6300
904/301-6310 (Fax)

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*

35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
352/547-3600
352/547-3623 (Fax)

400 West Washington Street, Suite 3100
Orlando, Florida 32801
407/648-7500
407/648-7643 (Fax)

Main Office
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
813/274-6000
813/274-6358 (Fax)

Reply to: Tampa, FL                                                                                      LRH

12/21/2015

<u>VIA ELECTRONIC MAIL AND UNITED STATES MAIL</u>

Edward A. Maldonado, Esq.
The Law Offices of Edward A. Maldonado, PA
2850 S. Douglas Road
Suite 303
Coral Gables, FL 33134
eam@maldonado-group.com

      Re:    FCC OIG Subpoenas Issued to AltaVista Group Incorporated,
              Astoria Marketing, Inc., EMIE Marketing, Inc., and Eric
              Lucero

Dear Mr. Maldonado:

      This letter follows up on our telephone conversation on December 15, 2015, regarding the subpoenas that the Federal Communications Commission Office of Inspector General (FCC OIG) issued on April 21, 2015, to your clients AltaVista Group Incorporated (AltaVista), EMIE Marketing, Inc. (EMIE), and Eric Lucero, respectively, and on April 24, 2015, to your client Astoria Marketing, Inc. (Astoria).

      As we discussed, the United States Department of Justice and the United States Attorney's Office for the Middle District of Florida have been asked by the FCC OIG to request authority to obtain judicial enforcement of the subpoenas issued to AltaVista, Astoria, EMIE, and Mr. Lucero, respectively, for documents relating to their operation and organization generally and their practices, policies, and procedures for enrolling subscribers in Assurance Wireless's Lifeline Assistance Program. We intend to request such authority immediately.

Edward Maldonado
December 21, 2015
Page 2


Nevertheless, if your clients agree to produce all responsive documents – in a format that complies with the instructions set forth in Appendix A to the subpoenas – no later than 45 days from the date of this letter (i.e., December 21, 2015), we will agree not to file petitions in federal district court requesting enforcement of the subpoenas during that time (or not before February 4, 2016). As part of any such agreement, however, we would expect your clients to take meaningful steps toward fully complying with the subpoenas, such as by retaining an e-vendor to resolve the technical problems that you said your clients – EMIE and Mr. Lucero, in particular – have experienced with their document collection and production. But given the complete lack of responses from AltaVista and Astoria over the last eight months, and the profoundly deficient production that the FCC OIG initially received from EMIE and Mr. Lucero in June 2015, we will not further delay requesting authority to enforce the subpoenas through actions filed against your clients in federal district court.

Thank you for your assistance with this matter. We look forward to hearing from you soon.

Sincerely,

A. LEE BENTLEY, III
United States Attorney

By:

LACY R. HARWELL, JR.
Assistant United States Attorney
Chief, Civil Division


Cc:

Seth W. Greene
Trial Attorney
Commercial Litigation Branch
Seth.Greene@usdoj.gov

# EXHIBIT 6

From:      Harwell, Randy (USAFLM)
To:        Edward A. Maldonado
Cc:        Greene, Seth (CIV); Eliot Lowenstein (Elliot.Lowenstein@fcc.gov)
Subject:   RE: FCC OIG subpoenas
Date:      Monday, December 28, 2015 9:42:19 AM
Attachments: image001.png
             image004.png

Ed, FCC OIG did receive the drive mentioned below and emailed you about it on Dec. 4, 2015. I will forward Elliott Lowenstein's email to you again in a moment, which speaks for itself.

Randy Harwell
Chief, Civil Division'
United States Attorney's Office, M.D. Fla.
tel. 813-274-6000
fax 813-274-6200

**From:** Edward A. Maldonado [mailto:eam@maldonado-group.com]
**Sent:** Tuesday, December 22, 2015 4:19 PM
**To:** Harwell, Randy (USAFLM)
**Subject:** RE: FCC OIG subpoenas

THE LAW OFFICE OF EDWARD A. MALDONADO, PA
MALDONADO LAW GROUP
2850 Douglas Road Suite 303 Coral Gables, Fl. 33134
Tel: 305-477-7580  Fax: 305-477-7504 Toll-Free: 1+ (877) 245-6326
www.maldonado-group.com

Tuesday, December 22, 2015                                                         Coral Gables, FL

In RE: FCC OIG subpoenas

Dear Mr. Harwell:

Please allow this email to confirm I have received your letter. Could you check with the FCC OIG on the receipt of a jump drive disk from EMIE and Eric Lucero related to the Production request that appears to have been received on 12/3/2015? We have a FedEx tracking number of 781841875954 in relation to that delivery. The package was sent by Mr. Lucero while on travel for business so the place of remission was Texas, not Florida. We do not have information if the FCC OIG was able to access the emails on the disk, or not. Please let me know so we know what to produce to your offices going forward for Mr. Lucero and EMIE.

Very Truly Yours,

/s/  *Edward A. Maldonado, Esq.*  /s/
This signature is for purposes of this e-mail transmission only.
Contract with this party shall occur only by original signature
on original documents.



2850 Douglas Road Suite 303 Coral Gables, Fl. 33134
Tel: 305-477-7580 Fax: 305-477-7504 Toll-Free: 1+ (877) 245-6326
www.maldonado-group.com
From: Edward A. Maldonado, Esq.
E-Mail: eam@maldonado-group.com
www.maldonado-group.com

Notice: This message may contain confidential information that is protected by the attorney-client privilege or otherwise. If you are not the intended recipient, you are notified that any disclosure, copying, distribution, or taking of action in reliance on the contents of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately by e-mail and delete the original message.

Notice: In accordance with Internal Revenue Service Circular 230, we advise you that unless otherwise expressly stated, any discussion of a federal tax issue in this communication or in any attachment is not intended to be used, and it cannot be used, for the purpose of avoiding federal tax penalties under the U.S. Internal Revenue Code, or, to promote, market or recommend to another party any transaction or matter addressed in this e-mail or attachments thereto.

**From:** Harwell, Randy (USAFLM) [mailto:Randy.Harwell@usdoj.gov]
**Sent:** Monday, December 21, 2015 1:07 PM
**To:** eam@maldonado-group.com
**Cc:** Greene, Seth (CIV)
**Subject:** FCC OIG subpoenas

Please see attached correspondence.

Randy Harwell
Chief, Civil Division
Office of the United States Attorney
for the Middle District of Florida
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Tel. 813-274-6000
Fax 813-274-6200
Randy.Harwell@usdoj.gov

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
_____
UNITED STATES OF AMERICA,            )
                                     )
              Petitioner,            )
                                     )         Misc. Case No. _____
       v.                            )
                                     )
ALTAVISTA GROUP, INC.,               )
                                     )
              Respondent.            )
_____  )
```

## <u>DECLARATION OF LACY R. HARWELL, JR.</u>

I, Lacy R. ("Randy") Harwell, Jr., do declare the following:

1.      I am an Assistant United States Attorney at the United States Attorney's Office for the Middle District of Florida, Tampa Office.  This declaration is based on personal knowledge I acquired during the performance of my duties.  If called and sworn as a witness, I could and would testify thereto.

2.      In December 2015, the Federal Communications Commission Office of Inspector General (FCC OIG) asked the United States Department of Justice to request authority to obtain judicial enforcement of the subpoena issued to Respondent AltaVista Group, Inc. (AltaVista). Exhibit 2 to the accompanying Memorandum in Support of Petition for Summary Enforcement of Inspector General Subpoena (Memo) is a true and correct copy of the FCC OIG subpoena issued to AltaVista.

3.      On December 14, 2015, I, along with Seth W. Greene, Trial Attorney at the Department of Justice, telephoned AltaVista's counsel, Edward A. Maldonado, and left a voicemail asking him to call me back to discuss the FCC OIG subpoena issued to AltaVista. Later that evening, Mr. Maldonado left me a voicemail, asking me to call him back.

4.      The next day, on December 15, 2015, I informed Mr. Maldonado during a telephone call, in which Mr. Greene also participated, that the FCC OIG had asked the Department of Justice to request authority to obtain judicial enforcement of the subpoena issued to AltaVista, and that we planned to request such authority immediately.  Counsel for the United States also informed Mr. Maldonado that if AltaVista agreed to produce all responsive documents within forty-five days, we would agree not to file a petition in federal district court requesting enforcement of the subpoena during that time.  Counsel for the United States added, however, that as part of any such agreement, we would expect AltaVista to take meaningful steps toward fully complying with the subpoena, such as by retaining an e-vendor to resolve the technical problems that Mr. Maldonado said AltaVista has experienced with its document collection and production.  Counsel for the United States memorialized this telephone conversation in a letter to Mr. Maldonado dated December 21, 2015.  Memo Ex. 5 at 1 (Letter from R. Harwell to E. Maldonado) (Dec. 21, 2015)).

5.      On December 22, 2015, I received an e-mail from Mr. Maldonado confirming receipt of my letter dated December 21, 2015, and asking whether the FCC OIG had received a document production from a different client.  Memo Ex. 6 at 1 (E-mail from E. Maldonado to R. Harwell (Dec. 22, 2015)).

6.      Mr. Maldonado never responded to my December 21, 2015 letter with respect to AltaVista.

I declare, under the penalty of perjury, that the foregoing is true and correct.  Executed this 24ᵗʰ day of July, 2016.

Lacy R. ("Randy") Harwell, Jr.
Assistant United States Attorney
United States Attorney's Office
Middle District of Florida, Tampa Office

3